FILED 27 FEB '26 10:59 USDC-ORP

# IN OR BEFORE THE UNITED STATES DISTRICT COURT
## DISTRICT COURT OF OREGON
### PORTLAND, OREGON

Jane Doe,
**Plaintiff**,

Case No. 3:26-CV-390-SB
**JURY DEMAND**

V.

**Complaint**
Declaratory and Injunctive
Relief
Monetary Damages

ROBERT F KENNEDY in his official capacity
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES("HHS").
NATIONAL PRACTITIONER DATA BANK("NPDB")
STATE OF NEW JERSEY
COMMONWEALTH OF PENNSYLVANIA
**Defendants**

### PRELIMINARY STATEMENT

This action arises from an unprecedented breakdown in state and federal regulatory systems that resulted in the creation, adoption, and nationwide dissemination of a fabricated disciplinary action against the Plaintiff—a licensed nurse, who never applied for, held, nor found administratively culpable for violations of the New Jersey Nurse Practice Act in a New Jersey court of law with respect to any alleged Registered or Practical Nurse license.

In the midst of the COVID-19 pandemic, a subcontracted law firm representing the New Jersey Board of Nursing generated a false "Final Adjudication" document dated May 14, 2020, inserted it into the State's official repository, and presented it as a legitimate state licensure action. The State of New Jersey has

1

since admitted, through multiple Open Public Records Act
responses, that it possesses no application, no license, no
investigative file, and no administrative record to support the
alleged adjudication.

The fabricated adjudication was not the product of any lawful
state process. It was created by private actors with access to
state systems and, upon information and belief, was used as a
retaliatory instrument against federal class-action litigants,
including the Plaintiff, in matters involving one of the
subcontracted law firm's other client, Excelsior College.
Neither the law firm nor Excelsior College is a state licensing
authority, a health care entity, or any entity authorized under
45 C.F.R. Part 60 to take or report licensure actions.

Despite the facial impossibility of the report and the absence
of any underlying licensure file, the National Practitioner Data
Bank ("NPDB"), a federal system of records maintained by the
U.S. Department of Health and Human Services, accepted the
fabricated adjudication and disseminated it nationwide. The
Pennsylvania State Board of Nursing then relied on the
fabricated New Jersey action to impose adverse measures against
the Plaintiff's Pennsylvania licenses, compounding the
constitutional violations and professional harm.

The result is a structural failure of both state and federal
systems: a private law firm fabricated a disciplinary action;
state agencies failed to detect or prevent the falsification;
and the federal government adopted and broadcast the false
record through the NPDB, transforming an unconstitutional state
action into a national sanction. The Plaintiff's professional
reputation, employment opportunities, and ability to practice
nursing were destroyed by a disciplinary action that never

2

occurred, issued by a state license she never held, based on a process that never existed.

This lawsuit seeks to remedy the constitutional, statutory, and structural violations that allowed a fabricated state action to become a federally endorsed barrier to the Plaintiff's livelihood. The Plaintiff seeks declaratory and injunctive relief, expungement of the false NPDB records, restoration of her professional standing, and damages for the profound harm caused by the Defendants' unlawful conduct.

## JURISDICTION AND VENUE

1.    This action arises under the Constitution and laws of the United States, including the Privacy Act, 5 U.S.C. § 552a; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-706; the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983; and 42 U.S.C. § 1985(3).

2.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims arise under federal law.

3.    Jurisdiction is also proper under 5 U.S.C. § 552a(g)(1) and (g)(5), which provide a private right of action and federal jurisdiction for violations of the Privacy Act by federal agencies.

4.    Jurisdiction is further proper under 5 U.S.C. § 702, which waives sovereign immunity for claims seeking non-monetary relief against federal agencies and officials acting in their official capacities.

5.    This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.    Supplemental jurisdiction over related state-law claims, if any, is proper under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the federal claims.

7.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1) because the Plaintiff resides in Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in this district and nationally, and the federal defendants are agencies of the United States.

8. Venue is also proper under 28 U.S.C. § 1391(b)(2) because the Plaintiff experienced professional, personal, reputational, and economic harms resulting from the Defendants' conduct within this district, including the dissemination and reliance upon the national fabricated NPDB report.

9. The NPDB's dissemination of the fabricated adjudication to employers, credentialing bodies, and licensing authorities within this district caused direct injury to the Plaintiff's ability to practice her profession in this district and nationally, further establishing venue.

10.    Personal jurisdiction exists over all Defendants because they purposefully directed actions toward this district, caused foreseeable harm within this district, or are federal or state entities subject to nationwide service of process.

## PARTIES

1. Plaintiff ("Jane Doe., Maketa Jolly") is an individual residing in the Commonwealth of Pennsylvania. The Plaintiff is a licensed nurse whose professional reputation, employability, and ability to practice nursing constitute protected liberty and property interests under the Constitution and federal law.

4

2. Defendant United States Department of Health and Human Services ("HHS") is a federal agency headquartered in Washington, D.C., responsible for maintaining the National Practitioner Data Bank and ensuring compliance with the Privacy Act, the Administrative Procedure Act, and the Health Care Quality Improvement Act.

3. Defendant National Practitioner Data Bank ("NPDB") is a federal system of records maintained by HHS. The NPDB collects, stores, and disseminates adverse licensure and disciplinary information concerning health care practitioners and is subject to the Privacy Act and the APA.

4. Defendant State of New Jersey is a sovereign state responsible for the actions of its agencies, including the New Jersey Board of Nursing, and for ensuring that its licensing processes comply with constitutional due-process requirements.

5. Defendant New Jersey Board of Nursing is a state licensing authority responsible for regulating nursing licensure in New Jersey. It is responsible for the creation, maintenance, and accuracy of licensure records and for ensuring that disciplinary actions comply with state and federal law.

6. Defendant Pennsylvania State Board of Nursing is a state licensing authority responsible for regulating nursing licensure in Pennsylvania. It relied on the fabricated New Jersey adjudication and telephone calls it purported to receive to impose adverse actions against the Plaintiff without providing constitutionally required due process.

7. Defendants subcontracted New Jersey Law Firm is a private law firm that contracts with the New Jersey Attorney General's Office to represent the New Jersey Board of Nursing. Upon information and belief, this firm fabricated the May 14, 2020

5

"Final Adjudication" concerning the Plaintiff and inserted it into the State's electronic repository.

8. Defendant Excelsior College, if culpable, is a private non-profit institution that is not recognized by New Jersey or Pennsylvania Department(s) of Education as an authorized nursing education provider and is not a health care entity or licensing authority under 45 C.F.R. Part 60. Upon information and belief, the subcontracted law firm acted in part to benefit Excelsior College in related federal class-action litigation.

9.    John Does 1-10 are individuals whose identities are presently unknown who participated in, facilitated, or approved the fabrication, adoption, or dissemination of the false adjudication and the resulting adverse actions.

**COUNT I —**

**VIOLATION OF THE PRIVACY ACT (5 U.S.C. § 552a)**
**(Against the U.S. Department of Health and Human**
**Services and the National Practitioner Data Bank)**

1. The National Practitioner Data Bank ("NPDB") is a federal system of records maintained by the U.S. Department of Health and Human Services ("DHHS") and is subject to the *Privacy Act, 5 U.S.C. § 552a.*

2. The Privacy Act requires federal agencies to maintain records with accuracy, relevance, timeliness, and completeness necessary to ensure fairness to the individual to whom the records pertain. *5 U.S.C. § 552a(e)(5).*

3. The Privacy Act further prohibits federal agencies from disclosing any record contained in a system of records unless the record is accurate, complete, and lawfully maintained. *5 U.S.C. § 552a(b).*

6

4. Under 45 C.F.R. Part 60, only specific entities are
authorized to submit reportable actions to the NPDB, including
state licensing authorities, hospitals, health care entities
that conduct formal peer review, professional societies,
malpractice payers, and federal or state enforcement agencies.

5. The regulatory definitions at 45 C.F.R. § 60.3 expressly
exclude private law firms, subcontracted counsel, educational
institutions, and non-health-care entities such as Excelsior
College from the categories authorized to take or report adverse
licensure actions.

6. On May 14, 2020, the State of New Jersey issued what it
characterized as a "Final Adjudication" concerning the
Plaintiff's alleged New Jersey Practical Nurse (LPN) license.

7. The Plaintiff never applied for, held, or was authorized
under New Jersey law to practice as an LPN, and therefore could
not have been the subject of any legitimate licensure action.

8. Multiple requests under the New Jersey Open Public Records
Act (OPRA) confirmed that no application, no license, and no
administrative record exist to support the alleged May 14, 2020,
adjudication.

9. Upon information and belief, the purported adjudication was
fabricated by the subcontracted law firm representing the New
Jersey Board of Nursing, which used the State's electronic
repository to create the appearance of an official state action.

10. A private law firm is not a "health care entity," "state
licensing authority," or any other entity authorized under 45
C.F.R. Part 60 to take or report licensure actions.

11. Because the alleged adjudication was fabricated, unsupported
by any state record, and not issued by a lawful state licensing

authority, it does not meet the regulatory definition of a reportable action under 45 C.F.R. § 60.2.

12. Despite the facial impossibility of the report and the absence of any underlying licensure file, the NPDB accepted the fabricated adjudication into its federal system of records.

13. The NPDB thereafter disseminated the fabricated record to hospitals, licensing boards, credentialing bodies, and other authorized recipients nationwide.

14. Each dissemination of the fabricated adjudication constitutes a separate violation of *5 U.S.C. § 552a(b)*.

15. The NPDB continued to maintain and disseminate the fabricated record even after being notified that the Plaintiff never held a New Jersey LPN license and that the alleged adjudication was unsupported by any state documentation.

16. By accepting, maintaining, and disseminating a fabricated and legally impossible state action, the NPDB failed to ensure the accuracy, relevance, timeliness, and completeness of the Plaintiff's records, in violation of *5 U.S.C. § 552a(e)(5)*.

17. The NPDB's conduct was intentional or willful because it acted with reckless disregard for its statutory obligations after receiving notice that the record was false, unsupported, and constitutionally defective.

18. As a direct and proximate result of the NPDB's violations of the Privacy Act, the Plaintiff suffered adverse effects, including reputational harm, loss of employment opportunities, inability to obtain licensure in other states, and ongoing professional and economic injury.

8

19. The Plaintiff is entitled to relief under *5 U.S.C. §
552a(g),* including amendment or expungement of the false record,
injunctive relief, actual damages, attorneys' fees, and costs.

### COUNT II —

### VIOLATION OF THE FOURTEENTH AMENDMENT
### RIGHT TO DUE PROCESS

### (Against the State of New Jersey, the New Jersey Board of Nursing, and the Pennsylvania State Board of Nursing)

1. The Fourteenth Amendment prohibits any State from depriving
an individual of liberty or property without due process of law.

2. A professional license, the ability to practice one's
profession, and one's professional reputation constitute
protected liberty and property interests under the Fourteenth
Amendment.

3. The Plaintiff never applied for, held, or was authorized to
practice under a New Jersey Practical Nurse (LPN) license.

4. On May 14, 2020, during the height of the COVID-19 pandemic,
the State of New Jersey issued a document purporting to be a
"Final Adjudication" concerning the Plaintiff's alleged New
Jersey LPN license.

5. The Plaintiff received no notice, no charges, no hearing, and
no opportunity to respond regarding any alleged New Jersey
licensure matter.

6. Multiple requests under the New Jersey Open Public Records
Act (OPRA) confirmed that the State of New Jersey possesses no
application, no license, no investigative file, and no
administrative record supporting the alleged May 14, 2020,
adjudication.

7. Upon information and belief, the purported adjudication was fabricated by the subcontracted law firm representing the New Jersey Board of Nursing, which used the State's electronic repository to create the appearance of an official state action.

8. A fabricated adjudication created by a private law firm is not a lawful state action and cannot satisfy constitutional due-process requirements.

9. The New Jersey Board of Nursing failed to provide the Plaintiff with any of the procedural safeguards required by the Fourteenth Amendment, including notice, a statement of charges, an opportunity to be heard, or a fair adjudicatory process.

10. The Pennsylvania State Board of Nursing relied on the fabricated New Jersey adjudication to impose adverse actions against the Plaintiff's Pennsylvania nursing licenses without providing constitutionally required due process.

11. By relying on a fabricated and legally impossible New Jersey action, Pennsylvania deprived the Plaintiff of her protected liberty and property interests without lawful procedure.

12. The actions of New Jersey and Pennsylvania were arbitrary, capricious, and undertaken without jurisdiction, as no underlying license or licensure proceeding existed.

13. A state cannot deprive an individual of liberty or property based on a fabricated record, nor can it rely on a void or fraudulent action to impose further sanctions.

14. The deprivation of the Plaintiff's professional licenses and reputation occurred without any meaningful opportunity to contest the allegations, in violation of the Fourteenth Amendment.

15. The Plaintiff suffered significant harm as a result of these constitutional violations, including loss of employment, reputational damage, inability to obtain licensure in other states, and ongoing professional and economic injury.

16. The constitutional violations were compounded when the fabricated New Jersey adjudication was transmitted to the National Practitioner Data Bank (NPDB), causing the federal government to adopt and disseminate unconstitutional state action nationwide.

17. The Plaintiff is entitled to declaratory and injunctive relief, including a declaration that the May 14, 2020, adjudication is void, expungement of all derivative state actions, restoration of her professional standing, and any other relief the Court deems just and proper.

**COUNT III —**
**ULTRA VIRES ACTION / ARBITRARY AND CAPRICIOUS AGENCY CONDUCT**
**(Administrative Procedure Act, 5 U.S.C. §§ 702, 706)**

(Against the U.S. Department of Health and Human Services and the National Practitioner Data Bank)

1. The Administrative Procedure Act ("APA"), *5 U.S.C. §§ 702 and 706*, authorizes judicial review of final agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

2. The National Practitioner Data Bank ("NPDB") is an agency component of the U.S. Department of Health and Human Services ("DHHS") and is subject to the Administrative Procedure Act (APA).

11

3. Under the Health Care Quality Improvement Act ("HCQIA") and
its implementing regulations at 45 C.F.R. Part 60, the NPDB may
accept reports only from entities expressly authorized to submit
adverse licensure or professional review actions, including
state licensing authorities, hospitals, health care entities
that conduct formal peer review, professional societies,
malpractice payers, and federal or state enforcement agencies.

4. The regulatory definitions at 45 C.F.R. § 60.3 exclude
private law firms, subcontracted counsel, educational
institutions, and non-health-care entities such as Excelsior
College from the categories authorized to take or report
licensure actions.

5. On May 14, 2020, the State of New Jersey issued a document
purporting to be a "Final Adjudication" concerning the
Plaintiff's alleged New Jersey Practical Nurse (LPN) license.

6. The Plaintiff never applied for, held, or was authorized to
practice under a New Jersey LPN license, and therefore could not
have been the subject of any legitimate licensure action.

7. Multiple requests under the New Jersey Open Public Records
Act (OPRA) confirmed that no application, no license, no
investigative file, and no administrative record exist to
support the alleged May 14, 2020, final adjudication.

8. Upon information and belief, the purported adjudication was
fabricated by the subcontracted law firm representing the New
Jersey Board of Nursing, which used the State's electronic
repository to create the appearance of an official state action.

9. A fabricated adjudication created by a private law firm is
not a licensure action taken by a state licensing authority and
does not meet the definition of a reportable event under 45
C.F.R. § 60.2.

10. Despite the facial impossibility of the report and the
absence of any underlying licensure file, the NPDB accepted the
fabricated adjudication into its federal system of records.

11. The NPDB's acceptance of a fabricated, non-existent, and ultra vires state action exceeded its statutory authority under HCQIA and 45 C.F.R. Part 60.

12. The NPDB's acceptance of the fabricated adjudication was arbitrary and capricious because it failed to consider the regulatory requirement that only lawful, final, adverse licensure actions issued by authorized state licensing authorities may be reported.

13. The NPDB further acted arbitrarily and capriciously by disseminating the fabricated adjudication to hospitals, licensing boards, credentialing bodies, and other authorized recipients nationwide.

14. The NPDB failed to conduct any meaningful review of the report's validity, despite its obligation under the APA to ensure that agency actions are grounded in law, supported by evidence, and consistent with statutory and regulatory requirements.

15. After receiving notice that the Plaintiff never held a New Jersey LPN license and that the alleged adjudication was unsupported by any state documentation, the NPDB refused to correct or remove the fabricated record, further demonstrating arbitrary and capricious agency conduct.

16. The NPDB's actions were not in accordance with federal law, exceeded statutory authority, and constituted an abuse of discretion under *5 U.S.C. § 706(2)(A) and (C).*

17. As a direct and proximate result of the NPDB's ultra vires and arbitrary actions, the Plaintiff suffered significant harm, including reputational injury, loss of employment opportunities, inability to obtain licensure in other states, and ongoing professional and economic damages.

18. The Plaintiff seeks declaratory and injunctive relief under the APA, including an order to set aside the NPDB's use of the fabricated adjudication(s), remove the false record(s), and grant any other appropriate relief.

## COUNT IV —
## FEDERAL PREEMPTION / STRUCTURAL FAILURE

### (Against the U.S. Department of Health and Human Services, the National Practitioner Data Bank, the State of New Jersey, and the State of Pennsylvania)

1. The Supremacy Clause of the United States Constitution provides that federal law is the supreme law of the land and preempts state actions that conflict with federal statutory or constitutional requirements.

2. The National Practitioner Data Bank ("NPDB") is a federal system of records created under the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. §§ 11101 et seq., and governed by federal regulations at 45 C.F.R. Part 60.

3. Federal law strictly limits the types of actions that may be reported to the NPDB and the entities authorized to submit such reports. Only state licensing authorities, hospitals, health care entities conducting formal peer review, professional societies, malpractice payers, and federal or state enforcement agencies may submit reportable actions.

4. The regulatory definitions at 45 C.F.R. § 60.3 expressly exclude private law firms, subcontracted counsel, educational institutions, and non-health-care entities such as Excelsior College from the categories authorized to take or report licensure actions.

5. On May 14, 2020, the State of New Jersey issued a document purporting to be a "Final Adjudication" concerning the Plaintiff's alleged New Jersey Practical Nurse (LPN) license.

14

6. The Plaintiff never applied for, held, or was authorized to practice under a New Jersey LPN license, and therefore could not have been the subject of any legitimate licensure action.

7. Multiple requests under the New Jersey Open Public Records Act (OPRA) confirmed that no application, no license, no investigative file, and no administrative record exist to support the alleged May 14, 2020, adjudication.

8. Upon information and belief, the purported adjudication was fabricated by the subcontracted law firm representing the New Jersey Board of Nursing, which used the State's electronic repository to create the appearance of an official state action.

9. A fabricated adjudication created by a private law firm is not a licensure action taken by a state licensing authority and does not meet the definition of a reportable event under 45 C.F.R. § 60.2.

10. Because the alleged adjudication was fabricated, unsupported by any state record, and not issued by a lawful state licensing authority, it is void ab initio under the Fourteenth Amendment and cannot serve as a lawful basis for federal reporting.

11. Federal law preempts state actions that violate constitutional due-process requirements. A state action taken without due process cannot be adopted, relied upon, or disseminated by a federal agency.

12. Despite the constitutional and regulatory defects, the NPDB accepted the fabricated adjudication into its federal system of records and disseminated it nationwide.

13. By accepting and disseminating a void, unconstitutional, and ultra-vires state action, the NPDB effectively federalized the state's unlawful conduct, transforming a state-level due-process violation into a federal injury.

14. The NPDB's regulatory structure contains no mechanism to verify whether state actions were lawful, constitutionally valid, or even real. This structural failure ensures that unconstitutional or fabricated state actions are automatically incorporated into the federal system.

15. The NPDB's structural design forces the federal government to rely on state actions without any federal review of their legality, accuracy, or procedural validity, resulting in the nationalization of unconstitutional state conduct.

16.  The NPDB's acceptance and dissemination of the fabricated adjudication is preempted by federal law because it conflicts with the Privacy Act's accuracy and fairness requirements, the HCQIA's reporting criteria, and the Fourteenth Amendment's due-process protections.

17. The NPDB's conduct constitutes a structural failure of the federal reporting system, whereby the federal government becomes the vehicle through which unconstitutional state actions are amplified and perpetuated.

16

18. As a direct and proximate result of this federal preemption failure and structural defect, the Plaintiff suffered significant harm, including reputational injury, loss of employment opportunities, inability to obtain licensure in other states, and ongoing professional and economic damages.

19. The Plaintiff is entitled to declaratory and injunctive relief, including a declaration that the fabricated New Jersey adjudication is void, that its federal adoption was unlawful, and that all derivative NPDB records must be expunged. The Plaintiff seeks any additional relief the Court deems just and proper.

## COUNT V —
## CIVIL RIGHTS CONSPIRACY (42 U.S.C. § 1985(3))

## (Against the State of New Jersey, the New Jersey Board of Nursing, the Pennsylvania State Board of Nursing, and the Subcontracted New Jersey Law Firm)

1. 42 U.S.C. § 1985(3) prohibits two or more persons from conspiring to deprive any individual of equal protection of the laws or of equal privileges and immunities under the laws.

2. A conspiracy under § 1985(3) exists where state actors and private individuals reach an agreement, explicit or implicit, to engage in coordinated conduct that results in the deprivation of constitutional rights.

3. The Plaintiff is a member of a protected class and has been engaged in protected activity, including participation in federal class-action litigation involving discriminatory practices in nursing education and licensure.

17

4. Upon information and belief, the subcontracted law firm representing the New Jersey Board of Nursing, acting jointly with state officials in New Jersey and Pennsylvania, entered into an agreement to fabricate, disseminate, and rely upon a false May 14, 2020 "Final Adjudication" concerning the Plaintiff's alleged New Jersey Practical Nurse (LPN) license.

5. The Plaintiff never applied for, held, or was authorized to practice under a New Jersey LPN license, and therefore could not have been the subject of any legitimate licensure action.

6. Multiple OPRA requests confirmed that no application, no license, no investigative file, and no administrative record exist to support the alleged adjudication.

7. Despite the absence of any underlying licensure file, the subcontracted law firm created a fabricated adjudication and inserted it into the State's electronic repository, giving it the appearance of an official state action.

8. The New Jersey Board of Nursing, acting under color of state law, permitted or facilitated the use of its official systems to generate and legitimize the fabricated adjudication.

9. The Pennsylvania State Board of Nursing subsequently relied on the fabricated New Jersey adjudication to impose adverse actions against the Plaintiff's Pennsylvania nursing licenses, despite the facial impossibility of the underlying record.

10. The coordinated actions of New Jersey, Pennsylvania, and the subcontracted law firm were undertaken with the shared objective of harming the Plaintiff's professional standing, credibility, and ability to practice her profession.

11. Upon information and belief, the subcontracted law firm had an additional motive to target the Plaintiff because of her

involvement in federal class-action litigation against its other client, Excelsior College, and used its access to state systems to retaliate against class-action participants.

12. The Defendants coordinated conduct deprived the Plaintiff of equal protection of the laws by subjecting her to fabricated disciplinary actions, false state records, and retaliatory professional sanctions not imposed on similarly situated individuals.

13. The Defendants' actions further deprived the Plaintiff of her constitutional right to due process by fabricating a state adjudication, denying her notice and an opportunity to be heard, and using the fabricated record to impose additional sanctions in Pennsylvania.

14. The conspiracy resulted in the transmission of the fabricated adjudication to the National Practitioner Data Bank (NPDB), causing the federal government to adopt and disseminate the unconstitutional state action nationwide.

15. As a direct and foreseeable result of the Defendants' conspiracy, the Plaintiff suffered significant harm, including reputational injury, loss of employment opportunities, inability to obtain licensure in other states, emotional distress, and ongoing professional and economic damages.

16. The Defendants acted intentionally, maliciously, and with reckless disregard for the Plaintiff's constitutional rights.

17.  The Plaintiff is entitled to compensatory damages, punitive damages against the private-party defendants, declaratory relief, injunctive relief, attorneys' fees, and any other relief the Court deems just and proper under 42 U.S.C. § 1988.

## STATEMENT OF FACTS

1. The Plaintiff is a licensed Registered Nurse and Practical Nurse whose professional reputation, employability, and ability to practice nursing constitute protected liberty and property interests.

2. At no time did the Plaintiff apply for, hold, or receive a Practical Nurse (LPN) license from the State of New Jersey.

3. On May 14, 2020, during the height of the COVID-19 pandemic, the State of New Jersey issued a document purporting to be a "Final Adjudication" concerning the Plaintiff's alleged New Jersey LPN license.

4. The Plaintiff received no notice, no charges, no hearing, and no opportunity to respond regarding any alleged administrative ("error")New Jersey licensure matter.

5. The Plaintiff made several OPRA requests for the LPN application, licensure file, investigative documents, and records supporting the May 14, 2020, adjudication.

6. In response to these OPRA requests, the State of New Jersey confirmed that it possessed no application, no license, no investigative file, no administrative record, and no documentation whatsoever supporting the alleged adjudication.

7. A multi-year investigation revealed that the May 14, 2020 "Final Adjudication" was fabricated, upon information and belief, by the subcontracted law firm representing the New Jersey Board of Nursing.

8. The subcontracted law firm used the State's electronic repository to create and insert a falsified adjudication, giving it the appearance of an official state action.

20

9. The subcontracted law firm simultaneously represented Excelsior College in federal multi-class-action litigation involving minority nursing students and graduates.

10. Upon information and belief, the fabricated adjudication was created as part of a retaliatory effort to discredit or harm federal class-action litigants, including the Plaintiff, for the benefit of the subcontracted law firm's private client, Excelsior College.

11. Excelsior College is not a health care entity, not a state licensing authority, and not recognized by New Jersey or Pennsylvania as an educational institution authorized to determine nursing licensure eligibility.

12. Under 45 C.F.R. Part 60, only state licensing authorities, hospitals, health care entities conducting formal peer review, professional societies, malpractice payers, and federal or state enforcement agencies may submit reportable actions to the National Practitioner Data Bank (NPDB).

13. Private law firms, subcontracted counsel, and educational institutions such as Excelsior College are not authorized reporting entities under federal regulations.

14. Since the Plaintiff never had a New Jersey LPN license, and the alleged adjudication was fabricated by a private law firm, the May 14, 2020, document does not qualify as a reportable licensure action under 45 C.F.R. § 60.2.

15. Despite the facial impossibility of the report and the absence of any underlying licensure file, the NPDB accepted the fabricated adjudication into its federal system of records.

16. The NPDB thereafter disseminated the fabricated record to hospitals, licensing boards, credentialing bodies, and other authorized recipients nationwide.

17. The Pennsylvania State Board of Nursing relied on the fabricated New Jersey adjudication to impose adverse actions against the Plaintiff's Pennsylvania nursing licenses, despite the absence of any lawful basis for doing so.

18. The Plaintiff received no notice, no charges, and no opportunity to be heard before Pennsylvania imposed these derivative sanctions.

19. The fabricated New Jersey adjudication and the derivative Pennsylvania actions were transmitted to the NPDB, causing the federal government to adopt and disseminate unconstitutional and fraudulent state actions.

20. The NPDB continued to maintain and disseminate the fabricated adjudication even after being notified that the Plaintiff never held a New Jersey LPN license and that the alleged adjudication was unsupported by any state documentation.

21.  As a direct result of the fabricated adjudication and its federal dissemination, the Plaintiff suffered severe reputational harm, loss of employment opportunities, inability to obtain licensure in other states, emotional distress, and ongoing professional and economic injury.

22. The combined actions of New Jersey, Pennsylvania, the subcontracted law firm, and the NPDB resulted in the creation, adoption, and national dissemination of a fabricated state action that was void, unconstitutional, and outside the scope of federal reporting authority.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:

1. A declaration that the May 14, 2020, New Jersey "Final Adjudication" is void, unconstitutional, fabricated, and without legal effect.

2. A declaration that the National Practitioner Data Bank's acceptance, maintenance, and dissemination of the fabricated adjudication violated the Privacy Act, the Administrative Procedure Act, and the Constitution.

3. A declaration that the Pennsylvania State Board of Nursing's reliance on the fabricated New Jersey adjudication violated the Plaintiff's rights to due process and equal protection.

4. An order directing the NPDB to immediately remove, correct, or expunge all records, reports, or entries derived from or referencing the fabricated New Jersey adjudication.

5. An order directing the State of New Jersey to remove the fabricated adjudication from all state repositories, databases, and licensure systems.

6. An order directing the Pennsylvania State Board of Nursing to vacate and expunge all adverse actions taken against the Plaintiff that were based on or derived from the fabricated New Jersey adjudication.

7. An injunction prohibiting Defendants from creating, maintaining, disseminating, or relying upon any false, fabricated, or unsupported licensure actions concerning the Plaintiff.

/s/
Dr Molop ffuy

23

8. An injunction requiring Defendants to implement procedures ensuring that fabricated or constitutionally defective state actions are not accepted or disseminated through the NPDB.

9. Compensatory damages in an amount to be determined at trial for the professional, reputational, emotional, and economic harm caused by Defendants' unlawful conduct.

10. Punitive damages against the private-party defendants for their intentional, malicious, and reckless disregard of the Plaintiff's constitutional rights.

11. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988, the Privacy Act, and other applicable law.

12. Pre- and post-judgment interest as allowed by law.

13. Such other and further relief as the Court deems just, equitable, and proper.


## VERIFICATION

I, Dr. Maketa S. Jolly, declare under penalty of perjury under the laws of the United States of America that I have read the foregoing Complaint, that I am the Plaintiff in this action, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 14th day of Feb , 2026, at
U.S.P.S. e RN .

## **NOTARY ACKNOWLEDGMENT**

State of Pennsylvania

County of Montgomery County

On this 14th day of February 2026, before me, the undersigned
Notary Public, personally appeared [Plaintiff Name], known to me
or satisfactorily proven to be the person whose name is
subscribed to the foregoing Verification, and acknowledged that
she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.


Notary Public

My Commission Expires: _____

## FEDERAL CIVIL COVER SHEET (JS-44) —

I. PLAINTIFFS

• Jane Doe

Residence: Montgomery County, Pennsylvania

Pro Se Litigant

II. DEFENDANTS

• United States Department of Health and Human Services

• National Practitioner Data Bank

• State of New Jersey

• New Jersey Board of Nursing

• Pennsylvania State Board of Nursing

• [Name of Subcontracted New Jersey Law Firm]

• John Does 1-10


III. BASIS OF JURISDICTION

• ☒ 1. Federal Question (28 U.S.C. § 1331)

• ☐ 2. U.S. Government Plaintiff

• ☒ 3. U.S. Government Defendant (HHS/NPDB)

• ☐ 4. Diversity


IV. NATURE OF SUIT (CHECK ONE)

• ☒ 890 — Other Statutory Actions (Privacy Act / APA)

• ☒ 440 — Civil Rights (Other)

• ☒ 442 — Employment / Licensing Due Process

• ☒ 950 — Constitutional Challenge

• ☐ Other: _____

V. ORIGIN

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded
- ☐ 4. Reinstated/Reopened
- ☐ 5. Transferred
- ☐ 6. Multidistrict Litigation
- ☐ 8. Multidistrict Litigation — Direct File

VI. CAUSE OF ACTION

Primary Statutes:

- 5 U.S.C. § 552a (Privacy Act)
- 5 U.S.C. §§ 702-706 (Administrative Procedure Act)
- 42 U.S.C. § 1983 (Due Process)
- 42 U.S.C. § 1985(3) (Civil Rights Conspiracy)
- Fourteenth Amendment to the U.S. Constitution

**Brief Description:**

Plaintiff challenges the creation, adoption, and federal
dissemination of a fabricated New Jersey licensure adjudication;
alleges violations of the Privacy Act, APA, constitutional due
process, federal preemption, and civil-rights conspiracy.

VII. REQUESTED RELIEF

- ☒ Declaratory Relief
- ☒ Injunctive Relief
- ☒ Monetary Damages
- ☒ Punitive Damages (against private defendants)

27

- ☒ Attorneys' Fees (42 U.S.C. § 1988)
- ☒ Expungement of NPDB and state records
- ☐ Class Action
- X☐X Jury Trial (requested)

VIII. RELATED CASES

- If applicable: None known
- If related: Provide docket numbers and judge names.

IX. ATTORNEY / PRO SE INFORMATION

Plaintiff:

Dr. Maketa S Jolly

Address: Under seal (unlawfully misused through state repositories)

Phone 484.442.0104

Email mjolly@jollyeducationconsultant.com

Pro Se

Dr Keta Jolly
King of Prussia, PA
19406




Retail

U.S. POSTAGE PAID
FCM LG ENV
KING OF PRUSSIA, PA 19406
FEB 14, 2026

97204

$4.14

RDC 99

S2324D503186-22

Mark O. Hatfield
U.S. Courthouse
1000 Southwest Third Ave.
Portland, Oregon 97204

Clerk of Court